J-S15033-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MATTHEW SHELTON PARKER | : | |
| | : | |
| Appellant | : | No. 1186 WDA 2018 |

Appeal from the Judgment of Sentence Entered July 31, 2018
In the Court of Common Pleas of Butler County
Criminal Division at No(s):  CP-10-CR-0000052-2017

BEFORE:  GANTMAN, P.J.E., SHOGAN, J., and COLINS*, J.

MEMORANDUM BY GANTMAN, P.J.E.:                    FILED MAY 8, 2019

Appellant, Matthew Shelton Parker, appeals from the judgment of sentence entered in the Butler County Court of Common Pleas, following his jury trial convictions for two counts of rape by forcible compulsion, and one count each of aggravated indecent assault, corruption of a minor, endangering the welfare of a child, indecent assault without consent of other, indecent assault by forcible compulsion, and indecent assault of a person less than sixteen.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Over the course of several years, Appellant repeatedly propositioned and sexually abused Victim, his minor daughter.  Ultimately, Appellant raped

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3125(a)(8), 6301(a)(1)(ii), 4304(a)(1), 3126(a)(1), 3126(a)(2), and 3126(a)(8), respectively.

---

*  Retired Senior Judge assigned to the Superior Court.

Victim twice around the time of her sixteenth birthday. Shortly after the assaults occurred, Victim revealed the abuse to a school guidance counselor who, as mandated, reported the abuse to the Department of Human Services. On February 15, 2018, the Commonwealth filed notice of its intent to introduce Pa.R.E. 404(b) evidence at trial. Following trial, a jury convicted Appellant of the offenses on February 28, 2018. On July 31, 2018, the court sentenced Appellant to an aggregate term of one hundred forty-eight (148) to two hundred ninety-six (296) months' incarceration, plus sixty (60) months' probation. The court also gave Appellant notice of his sex offender reporting requirements. Appellant filed a timely notice of appeal on August 17, 2018. On August 20, 2018, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Following an extension, Appellant filed his Rule 1925(b) statement on October 22, 2018.

Appellant raises the following issues for our review:

> DID THE COURT ERR BY ADMITTING EVIDENCE OF PRIOR BAD ACTS AND BY FAILURE TO OFFER A CURATIVE INSTRUCTION AND/OR A JURY CHARGE?
>
> DID THE COURT ERR WHEN IT IMPEDED IMPEACHMENT DURING CROSS-EXAMINATION OF THE ALLEGED VICTIM?
>
> WAS THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE?
>
> WAS THE JURY MISHANDLED BY THE COURT?

(Appellant's Brief at 5).

"The admissibility of evidence is at the discretion of the trial court and

only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." Commonwealth v. Ballard, 622 Pa. 177, 197-98, 80 A.3d 380, 392 (2013), cert. denied, 573 U.S. 940, 134 S.Ct. 2842, 189 L.Ed.2d 824 (2014).

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

Commonwealth v. Goldman, 70 A.3d 874, 878-79 (Pa.Super. 2013), appeal denied, 624 Pa. 672, 85 A.3d 482 (2014). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." Commonwealth v. Lopez, 57 A.3d 74, 81 (Pa.Super. 2012), appeal denied, 619 Pa. 678, 62 A.3d 379 (2013).

Similarly, our standard of review of a court's decision to include or omit jury instructions "is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." Commonwealth v. Baker, 24 A.3d 1006, 1022 (Pa.Super. 2011), aff'd, 621 Pa. 401, 78 A.3d 1044 (2013) (quoting Commonwealth v. Galvin, 603 Pa. 625, 651, 985 A.2d 783, 799 (2009), cert. denied, 559 U.S. 1051, 130 S.Ct. 2345, 176 L.Ed.2d 565 (2010)).

The following principles apply to a weight of the evidence claim:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Commonwealth v. Small, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

Commonwealth v. Champney, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), cert. denied, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable William R. Shaffer, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (See Trial Court Opinion, filed October 30, 2018, at 2-8) (finding: (1) trial counsel did not object to Commonwealth's introduction of prior bad acts evidence; therefore, Appellant's evidentiary claim is waived; moreover, Appellant's claim would not merit relief; prior bad acts evidence was admissible under res gestae exception; evidence showed history of case and natural development of facts; evidence also demonstrated Appellant's

common plan or scheme because it reflected examples of abuse of similar nature; Appellant's claim that trial court failed to give curative instruction regarding prior bad acts evidence is waived because Appellant did not request instruction or object to lack of instruction at trial; further, trial court declines to address Appellant's ineffective assistance of counsel claim upon direct review[2]; (2) counsel did not object at trial to Commonwealth's use of audio tape of Victim's forensic statement, so Appellant's claim is waived; moreover, issue would merit no relief; trial court did not instruct Commonwealth to use any particular procedure regarding forensic interview; (3) Appellant's weight claim is waived, because Appellant failed to raise weight challenge at any stage before filing notice of appeal; moreover, verdict was not against weight

_____

[2] To the extent Appellant makes an ineffectiveness of counsel argument in his first appellate issue, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." Commonwealth v. Grant, 572 Pa. 48, 67, 813 A.2d 726, 738 (2002). Our Supreme Court has recognized two very limited exceptions to the general rule in Grant regarding when trial courts may review ineffective assistance of counsel claims: (1) in extraordinary circumstances where claims of trial counsel's ineffectiveness are apparent from the record and immediate consideration best serves the interests of justice and/or (2) where there is good cause shown and review of the claim is preceded by a waiver of the right to seek collateral review. Commonwealth v. Holmes, 621 Pa. 595, 598-99, 79 A.3d 562, 563-64 (2013). Ineffectiveness claims may be raised on direct appeal only if: (1) the appellant raised his claim(s) in a post-sentence motion; (2) an evidentiary hearing was held on the claim(s); and (3) a record devoted to the claim(s) has been developed. Commonwealth v. Leverette, 911 A.2d 998, 1004 (Pa.Super. 2006). Here, Appellant failed to satisfy the requirements of Holmes and Leverette. Therefore, this appeal is not the proper time to raise or address any ineffectiveness of counsel claim. Instead, Appellant must wait to raise his claim(s) in a timely filed PCRA petition.

of evidence and does not shock one's sense of justice; (4) trial court did not permit juror to ask counsel question during closing arguments when juror sought to do so; court advised jurors to seek additional instruction by making written request through foreperson). The record supports the court's analysis, and we see no reason to disturb it. Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2019

Circulated 04/23/2019 04:44 PM

# IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

**COMMONWEALTH OF PENNSYLVANIA**        **CRIMINAL DIVISION**

**vs.**                                                    **C.A. No. 0052 of 2017**

**MATTHEW S. PARKER**

For the Commonwealth:     Patricia J. McLean, Esq., First Assistant District Attorney
For the Defendant:            Erika P. Kreisman, Esq.

## ORDER OF COURT PURSUANT TO Pa.R.A.P. 1925(a)

AND NOW, this 29th day of October, 2018, the Clerk of Courts is directed to transmit the above record to the Superior Court of Pennsylvania in accordance with the Rules of Appellate Procedure.

It appears the Defendant raises the following claims in his "Concise Statement of Matters Complained of on Appeal":

1) the Court erred in permitting the introduction of evidence of prior bad acts;

2) the Court failed to give a limiting instruction relative to the prior bad acts evidence;

3) trial counsel rendered ineffective assistance when he "did not oppose the admission of" the prior bad acts evidence prior to trial;

4) "[t]he Court erred when it ordered Defense Attorney Clark to play [the victim's] forensic interview tape to her prior to further cross examination";

5) the "verdict is against the weight and sufficiency of the evidence;" and

6) the Court abused its discretion when it did not permit a juror to ask a question during closing argument.

The claims will be addressed in the order they were presented in the Statement.

1

The Defendant first claims the Court erred in failing to exclude evidence of prior bad acts. Counsel for the Defendant did not object to the introduction of the prior bad acts evidence. Accordingly, the Defendant's claim is waived. Even if that is not the case, the evidence was admissible under the *res gestae* exception. The evidence of the prior bad acts was necessary to show the history of the case and the natural development of the facts, specifically, the years-long, escalating course of abuse by the Defendant against the victim and the circumstances attendant to the victim delaying disclosure of that abuse. The prior bad acts evidence was probative of the Defendant's common plan or scheme in that they reflected abuse of a similar nature as occurred at the victim's residence.

The Defendant's second claim, that the Court failed to give a limiting instruction, is waived because the Defendant did not object to the Court's failure to give such an instruction.

In his third claim, the Defendant asserts that trial counsel rendered ineffective assistance. Such claims are properly reserved for collateral review under *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2003). We decline to grant the Defendant's request to find at this stage from the record that trial counsel rendered ineffective assistance.

Fourth, the Defendant claims, "[t]he Court erred when it ordered Defense Attorney Clark to play [the victim's] forensic interview tape to her prior to further cross examination." The Defendant did not object to the procedure utilized regarding the victim's forensic interview. The Defendant's claim is waived. Even if that were not so, the Court did not order Defense Attorney Clark to utilize any particular procedure regarding the forensic interview.

The Defendant next claims that the "verdict is against the weight and sufficiency of the evidence." The Court believes the Defendant's weight of the evidence claim is waived in that

2

68

the claim was not raised before this Court prior to the Notice of Appeal having been filed. Even if that is not so, the verdict is not "against the weight and sufficiency of the evidence."

The Supreme Court of Pennsylvania has addressed the standard of review for a sufficiency of the evidence challenge as follows:

> When reviewing a challenge to the sufficiency of the evidence, we must determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering the entire trial record and all of the evidence received, and drawing all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. The Commonwealth may sustain its burden of proof by wholly circumstantial evidence.

*Commonwealth v. Segida*, 985 A.2d 871, 880 (Pa. 2009)(citations omitted). More recently, the Supreme Court has set forth the standard of review related to the sufficiency of the evidence:

> The standard of review for evidentiary sufficiency is whether the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, supports the jury's finding that every element of the offense was proven beyond a reasonable doubt. The Commonwealth may sustain this burden by wholly circumstantial evidence and the jury is free to believe all, part, or none of the evidence.

*Commonwealth v. Hicks*, 156 A.3d 1114, 1123 (Pa. 2017), *cert. denied sub nom Hicks v. Pennsylvania*, 138 S. Ct. 176 (2017)(citations omitted). "The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. Ct. 2018)(quoting *Commonwealth v. Williams*, 176 A.3d 298 (Pa. Super. Ct. 2017).

The Supreme Court of Pennsylvania has addressed weight of the evidence challenges as in the following manner:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the

3

68

witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 741 A.2d 666, 672-73 (Pa. 1999)(citations omitted). A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Appellate review of a weight of the evidence claim is directed to a review of the trial court's exercise of discretion, not the underlying question of whether a verdict was against the weight of the evidence. *Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017)(citing *Commonwealth v. Clay*, 64 A.3d 1049 (Pa. 2013)). The Pennsylvania Supreme Court in *Clay* noted the standard applicable to weight of the evidence claims:

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). As was noted above, the Defendant's weight of the evidence claim is waived as it has been raised for the first time in his Statement.

The Defendant was convicted of two counts of rape by forcible compulsion or threat of forcible compulsion, one count each of aggravated indecent assault, corruption of minors, endangering the welfare of a child, and three counts of indecent assault. Section 3121 of the Crimes Code, rape, provides in relevant part:

> **(a) Offense defined.**—A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:
>
> (1) By forcible compulsion.
> (2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.

4

Section 3125(a)(8) of the Crimes Code, aggravated indecent assault, provides:

> **(a) Offenses defined.**—Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:
>
> ...
>
> > (8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

Section 6301(a)(1)(ii) of the Crimes Code provides:

> **(a) Offense defined.**—
>
> ...
>
> > (ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

Section 4304(a)(1) of the Crimes Code sets forth:

> **(a) Offense defined.**—
> > (1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

Finally, § 3126 of the Crimes Code provides in relevant part the following:

> **(a) Offense defined.**—A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> > (1) the person does so without the complainant's consent;
> > (2) the person does so by forcible compulsion;
> > ...
> > (8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

We will briefly set forth some of the testimony that was presented by the Commonwealth at trial, principally that of the victim and her mother. We do not intend to set forth the entirety of the Commonwealth's case. The Defendant did not testify on his own behalf.

The victim testified that the Defendant began by asking her for sex at age eight or nine. February 26, 2018 N.T., 57. She testified that the following day, the Defendant "guilt tripped" her so she did not disclose the incident immediately, but instead waited approximately one year to do so. *Id.* at 58. From age fourteen to sixteen, the victim testified, the Defendant constantly asked for sex. *Id.* at 60. At one point, after returning from a field trip, the victim disclosed to her mother that the Defendant had been asking her to have sex. *Id.* at 61. No action resulted from the disclosure, the victim testified. *Id.* at 65. When the victim rejected the Defendant's requests to have sex, which requests were usually made while he and the victim were cuddling in his bedroom, the Defendant, the victim testified, would become upset and stop talking to people. *Id.* at 62-64.

When the victim was fourteen years old, the Defendant, while cuddling with the victim in his bed, began to put his hand down the victim's underwear and touch her genitals. *Id.* at 67. The first time it occurred, the victim screamed at the Defendant and ran outside. The Defendant followed and indicated to the victim that she had hurt his feelings. *Id.* at 68. The inappropriate touching—the Defendant putting his hand in the victim's genitals—became a frequent, near-daily occurrence. *Id.* at 71, 113. At times, the victim testified, she would tell the Defendant "no" when he attempted to assault her. The Defendant would respond by becoming upset and moping. *Id.* at 72. The victim testified that the Defendant once touched her in her bedroom. *Id.* at 73. She also testified that the Defendant touched her inappropriately during a camping trip and while at a Disney World Resort. *Id.* at 75-80.

The victim related that while the Defendant never threatened her with harm, he made threats towards himself. The victim testified: "He would say that he couldn't last long without me if I left. He told me how he would do suicide...He said that one day he would take a bottle, drink it, drive, get run over by a truck. Find some place to crash." *Id.* at 74. The victim testified that at a point prior to her sixteenth birthday, when the Defendant asked the victim to have sex, the victim responded by saying, "I don't care anymore." *Id.* at 82. The next day, when she came home from school, the victim was nervous and remained outside before going into her home. *Id.* at 82-83. When she went inside, the Defendant took her to his bedroom and had vaginal intercourse with her. *Id.* at 83. The Defendant again had vaginal intercourse with the victim shortly after her sixteenth birthday. *Id.* at 85-86. The evidence demonstrated the relationship between the Defendant and the victim: the Defendant was a parent, guardian, or other adult person supervising the welfare of the child. The Defendant was in his mid-thirties when the physical abuse occurred. *Id.* at 48.

The victim's mother testified that the victim disclosed to her on two occasions that the Defendant had asked the victim to have sex. *Id.* at 200, 203. Her testimony corroborated the victim's testimony that the victim went on a trip Disney World trip and went camping with the Defendant. *Id.* at 204-05. She confirmed that there was a trip to Disney World where she did not accompany the Defendant, the victim, and the victim's brothers. *Id.* at 208. After the victim disclosed the abuse, the Defendant admitted to the victim's mother that "he had been feeling guilty for a while because he did have feelings for [the victim]." *Id.* at 223. At one point the Defendant arrived at the victim's mother's home, "grabbed a suitcase, started throwing stuff in it, laughed, and said, oh, what am I doing, I don't need this, grabbed a hand gun and a bottle of liquor" before driving off in his truck. *Id.* at 227-29. The victim's mother testified that there

were times where she witnessed the Defendant and the victim "cuddling under the covers together" and would ask them to stop. *Id.* at 242.

Nothing presented at trial demonstrated that the victim fabricated her testimony. Based on the testimony of the victim, there was sufficient evidence to find the Defendant guilty of each of the crimes charged. Most importantly, the testimony of the minor victim demonstrated that the Defendant had sexual intercourse with her by forcible compulsion or threat of forcible compulsion that would prevent resistance by a person of reasonable resolution on two occasions. The evidence also demonstrated that the Defendant committed aggravated indecent assault and indecent assault against the victim on numerous occasions prior to her sixteenth birthday, without the victim's consent, and by forcible compulsion or threat thereof. These actions occurred while the Defendant was in his thirties, and while he was supervising the welfare of the victim. As the jury was free to accept the victim's testimony, nothing about the verdict shocks one's sense of justice.

Finally, there was no error where the Court did not permit a juror, during closing argument, to ask a question of the attorney for the Defendant. The jurors were informed that they could seek additional instruction by making a request through their foreperson in writing. February 27, 2018 N.T., 190.

By the Court,

William R. Shaffer, Judge

LISA WEILAND LOTZ
CLERK OF COURTS
ENTERED AND FILED
2018 OCT 30 AM 10: 29
BUTLER COUNTY
COURT OF COMMON PLEAS

t 10-30-18

mce
lce
(5) da
atty Kreisman
appeal clerk

8