J-A10007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEPHON JOHNSON | : | No. 1137 EDA 2024 |

Appeal from the Order Entered April 4, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003850-2023

BEFORE: PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED JUNE 2, 2025**

The Commonwealth appeals from the order entered by the Philadelphia County Court of Common Pleas denying its motion to lift the nolle prosequi ("nolle pros") against Stephon Johnson. After careful review, we are constrained to reverse and remand for further proceedings.

Due to our disposition, a detailed recitation of the factual history is unnecessary. Briefly, on April 20, 2023, Johnson was arrested and charged with multiple violations of the Uniform Firearms Act[1] ("VUFA"). Approximately a week later, the court granted Johnson's motion to modify bail. Following a preliminary hearing on May 26, 2023, all charges were held for court.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6101-6127.

On June 9, 2023, a criminal information was filed, and a pretrial conference was scheduled. On June 26, 2023, the pretrial conference was continued, as the assigned Judge was not sitting. The next court date was scheduled for August 18, 2023.

On August 18, 2023, the parties appeared for a status hearing. Defense counsel explained that they were a little late to the hearing because he needed to talk to his client about an issue brought up by the Commonwealth prior to the hearing regarding a DNA swab that was taken at the time of Johnson's arrest. *See* N.T., Status, 8/18/23, at 3. Specifically, defense counsel wanted to ask his client if he wanted a DNA test completed, because trial would not be scheduled until at least December if the test were done, whereas the trial date could be much earlier if no DNA test was requested. *See id.*

The Commonwealth indicated it had conveyed an offer to defense counsel, and that if Johnson did not want to accept the offer, the Commonwealth would order the DNA test. *See id.* at 4. After the Commonwealth concluded definitively on the record that it was going to order the DNA test, the court scheduled a status of discovery date for December 15, 2023. *See id.* Defense counsel noted they had filed a motion to suppress and asked if the motion could be heard sooner. *See id.* The court scheduled a hearing for the motion to suppress for September 15, 2023. *See id.* at 5.

On September 15, 2023, the parties appeared for the suppression hearing. Following argument from both sides, the court denied the motion to suppress. The following relevant exchange then took place:

> THE COURT: Motion to suppress is denied. Do you want a waiver trial right now?
>
> [DEFENSE COUNSEL]: The answer is yes, however, at the last scheduling conference, there was DNA that was swabbed for and–
>
> THE COURT: Do you want a waiver trial–
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: –right now?
>
> [DEFENSE COUNSEL]: Yes. The answer is yes.
>
> THE COURT: Colloquy Mr. Johnson.
>
> [COMMONWEALTH]: And, Your Honor, we would not be prepared for a waiver trial today. We were prepared for the motion alone, because the DNA results are outstanding.
>
> THE COURT: I'm not continuing it.
>
> [COMMONWEALTH]: And, Your Honor, I believe it already has a trial date in December, based on that prior request for DNA analysis.
>
> THE COURT: He's in custody. I'm not letting that man sit in custody for another three months, hoping that the DNA comes back.
>
> [COMMONWEALTH]: And, Your Honor, in that case, this would be the Commonwealth's motion to nolle pros.
>
> THE COURT: Motion to nolle pros granted.

N.T., Suppression Hearing, 9/15/23, at 32-33.

On December 17, 2023, the Commonwealth filed a motion to lift the nolle pros. In the motion, the Commonwealth stated that it had not been ready to proceed to a waiver trial on September 15, 2023 solely because the DNA report was incomplete. **See** Motion to Lift Nolle Pros, 12/17/23, at ¶ 2-3 (stating the Commonwealth was otherwise ready to proceed to trial except that the DNA report was incomplete). However, the Commonwealth was now ready to proceed as the DNA report had been completed.

On April 4, 2024, the court held a hearing on the motion. Defense counsel asked the court to deny the motion, arguing (1) the DNA report was too late and (2) it would not be fair to put Johnson back in custody as the Commonwealth was likely to request bail again. **See** N.T., Motion Hearing, 4/4/24, at 4-6.

The Commonwealth responded that it had no plans to increase bail and was okay with the current standing of Johnson being out on the street. **See id.** at 7. The Commonwealth also clarified the DNA report was originally not anticipated for six months, which would have been around February 2024, and that it specifically asked for the report to be prioritized so that they were able to get the report by December 2023. **See id.** at 9-10.

The trial court stated that its main concern at the time of the suppression hearing was the fact that Johnson had been sitting in custody since he had not made bail. **See id.** at 11. The court elaborated as follows:

And instead of either agreeing to a motion to reduce his bail or even engaging in a conversation about that, the attorney for the Commonwealth decided to nolle pros the case.

On that day I did not understand why [the Commonwealth] opted to nolle pros versus just agreeing to allow him to go out on house arrest or even engaging in a conversation about his bail because that was the only concern that I raised, that he was in custody and [the Commonwealth] opted to nolle pros. [The Commonwealth] didn't have to nolle pros this case. I think [the Commonwealth] nolle prossed the case because [it] thought I was going to find him not guilty.

…

But [the Commonwealth] literally could have just said, Well, Your Honor, I'll agree to let him out on house arrest on this case. Even if he had nine other things holding him, right, [the Commonwealth] could have said, Well, Your Honor, if that's the concern, the concern is that he's in custody, I''ll agree to let him out on house arrest or I'll agree to SOB bail. But instead, [the Commonwealth] nolle prossed. I was scratching my head at the time that [the Commonwealth] decided to nolle pross[] the case. I didn't understand why [the Commonwealth] would do that in response to my concern that he was being held in custody on this case.

*Id.* at 11-12. The court then denied the motion. This timely appeal followed.

The Commonwealth raises the following issue on appeal:

Did the [trial] court err in denying the Commonwealth's motion to vacate the entry of nolle prosequi, where the Commonwealth had been forced to choose between proceeding to trial without the pending DNA results on a date that was not a scheduled trial date or moving for nolle prosequi, and the Commonwealth timely and diligently moved to vacate the nolle prosequi as soon as it obtained the DNA results?

Appellant's Brief, at 4.

"A *nolle prosequi* is a voluntary withdrawal by the prosecuting attorney of present proceedings on a particular bill of indictment." ***Commonwealth v.***

- 5 -

***Goldman***, 70 A.3d 874, 878 (Pa. Super. 2013) (citation omitted).[2] Court approval is required before a nolle pros may be entered on charges that have been filed. ***See*** 42 Pa.C.S.A. § 8932; ***see also*** Pa.R.Crim.P. 585. The Commonwealth may move to vacate a nolle pros at any time, but it similarly can only be lifted with court approval. ***See Goldman***, 70 A.3d at 878.

Trial courts have discretion to decide whether to grant or deny a nolle pros based on two factors: "(1) whether the Commonwealth's reason for the request is reasonable; and (2) whether the defendant has a valid speedy trial claim." ***Id.*** (citation omitted).

This Court reviews the trial court's denial of a motion to lift a nolle pros for an abuse of discretion. ***See id.*** "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Commonwealth v. Orie***, 88 A.3d 983, 1016 (Pa. Super. 2014) (citation omitted).

The Commonwealth argues the trial court's refusal to grant its motion to vacate the nolle pros was essentially a dismissal with prejudice. It contends

_____

[2] We note that ***Goldman*** has been flagged as superseded by Rule 600 as stated in ***Commonwealth v. Lear***, 290 A.3d 709, FN5 (Pa. Super. 2023) (noting that Rule 600 now eliminates the distinction between "excludable time" and "excusable delay" as used in ***Goldman*** before Rule 600 was replaced in 2013). As there are no Rule 600 issues here, this negative treatment does not affect our analysis.

a dismissal with prejudice is an extreme remedy and sanction reserved for egregious circumstances, which "[n]othing of that nature happened here." Appellant's Brief, at 9. The Commonwealth also argues the basis for the trial court's refusal—that the Commonwealth could have instead raised a bail motion on Johnson's behalf—is contrary to governing authority.

Here, as shown above, Johnson's custody was the main focus of the court's reasoning throughout the proceedings below and continues to be a focus in the court's opinion on appeal. *See* Trial Court Opinion, 10/11/24, at 8 (stating the Commonwealth could have instead chosen to "request[] an order from the court to expedite the DNA analysis, to modify his bail conditions, agree to place him on house arrest, or inform the court that this was not the only matter holding him."). However, in its opinion, the court insists its decision to deny the motion to lift the nolle pros was based on the Commonwealth's lack of due diligence during this prosecution. *See id.* at 6.

After a review of the record, we are compelled to find the trial court abused its discretion. First, we agree with the Commonwealth that it is not required to act as an advocate for a defendant. Had the matter of bail been properly raised by defense counsel, the Commonwealth could have participated in such discussions with the court and counsel. However, our review of the record reveals no bail motion was made by the defense, nor were there any discussions regarding bail during the hearing in which the nolle pros was granted.

Rather, the trial court's statements indicate that the court's main concern here was Johnson not sitting in custody for an extended period of time. By granting the nolle pros in the first place, the court appears to have received exactly what it wanted—Johnson not in custody any longer while the Commonwealth continued to wait for the DNA results. The trial court's refusal to vacate the nolle pros once the DNA results became available effectively dismissed Johnson's charges. *See Goldman*, 70 A.3d at 881.

> Dismissal of charges is an extreme sanction that should be imposed sparingly and only in cases of blatant prosecutorial misconduct. A dismissal punishes not only the prosecutor, but also the public at large because the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. Therefore, a trial court should consider dismissal of charges only where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.

*Id.* (quotation marks and citations omitted).

In *Goldman*, two defendants were charged with VUFA and related offenses. *See id.* at 877. Just prior to the scheduled trial date, Goldman's counsel requested a one-day continuance, as he would be unavailable for a portion of the original date. *See id.* The court granted the continuance for both cases. *See id.*

On the rescheduled trial date, the Commonwealth was not prepared to proceed because the police witnesses had not been subpoenaed due to a communication breakdown with the police-court liaison whom the Commonwealth had relied on to notify the officers. *See id.* The trial court

denied the Commonwealth's request for a continuance and presented the Commonwealth with a choice: request to nolle pros the charges or have the cases dismissed. ***See id.*** The Commonwealth moved to nolle pros in both cases, which the trial court granted. ***See id.***

Just over a week later, the Commonwealth filed a motion to vacate the nolle pros, assuring proper communication with the police-court liaison, and requesting the earliest possible trial date. ***See id.*** at 877-78. After hearing argument, the trial court denied the motion. ***See id.*** at 878.

On appeal, this Court reversed, remanded, and directed the trial court to lift the nolle pros. Specifically, this Court found the trial court abused its discretion because there was no Rule 600 speedy trial issue; when the trial court offered the Commonwealth a choice between a discharge or a request for nolle pros, it "effectively terminated the prosecution with prejudice"; there was no blatant prosecutorial misconduct; and the defendants did not claim the delay prejudiced their ability to defend their cases and there was otherwise no demonstrable prejudice to the defendants. ***Id.*** at 880-81.

Here, the record does not reflect any intent to have the charges dismissed with prejudice. Nor does the record reflect blatant prosecutorial misconduct. There was a clear discussion about submitting the DNA for testing, and the trial court had clearly permitted the Commonwealth to do so, specifically scheduling a status check on the results of such testing for December 2023. The Commonwealth did not have control over the timing of

the testing; although it is clear the Commonwealth diligently stayed on top of the timing, specifically requesting that this case be prioritized. Finally, Johnson does not claim the delay prejudiced his ability to defend himself, nor is there an indication in the record of demonstrable prejudice to him, such as a violation of his speedy trial rights. *See id.* at 880-81.

After the court refused to "continue" the waiver trial, on a date that was never scheduled for a waiver trial, the Commonwealth was left with the choice to proceed to trial without evidence that the court had permitted them to order or proceed with a voluntary withdrawal. The Commonwealth chose to proceed with a voluntary withdrawal. While the court indicates after the fact that it was confused when the Commonwealth requested a nolle pros and insinuates the Commonwealth could have instead considered modifying Johnson's bail or custody status, these options were never requested or discussed during the hearing. We reiterate the Commonwealth had no duty to raise such a request on Johnson's behalf.

Notably, immediately after the Commonwealth received the DNA report, in December when the status conference regarding the DNA testing had been scheduled in the first place, the Commonwealth promptly moved to vacate the nolle pros and schedule trial. When the trial court refused to lift the nolle pros, it effectively terminated the prosecution with prejudice. *See id.* at 881.

We acknowledge that the trial court filed a well-written Rule 1925(a) opinion, and we thank the trial court for its conscientious consideration of this

matter. However, based upon this record, we must conclude the trial court abused its discretion in denying the Commonwealth's motion to vacate the nolle pros. *See id.* at 880-81. Therefore, we reverse the trial court's order, direct the trial court to lift the nolle pros, and to reinstate the charges.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/2/2025