J. S17037/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ASHLEY LYNN RUSSELL, | : | No. 812 MDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered April 15, 2019,
in the Court of Common Pleas of Northumberland County
Criminal Division at No. CP-49-CR-0001161-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ASHLEY LYNN RUSSELL, | : | No. 813 MDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered April 15, 2019,
in the Court of Common Pleas of Northumberland County
Criminal Division at No. CP-49-CR-0001162-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ASHLEY LYNN RUSSELL, | : | No. 814 MDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered April 15, 2019,
in the Court of Common Pleas of Northumberland County
Criminal Division at No. CP-49-CR-0001208-2016

J. S17037/20

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                             :         PENNSYLVANIA
              v.             :
                             :
ASHLEY LYNN RUSSELL,         :        No. 815 MDA 2019
                             :
          Appellant          :


Appeal from the Judgment of Sentence Entered April 15, 2019,
in the Court of Common Pleas of Northumberland County
Criminal Division at No. CP-49-CR-0001219-2016


BEFORE:  PANELLA, P.J., STABILE, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 08, 2020**

Ashley Lynn Russell appeals from the judgments of sentence entered

April 15, 2019[1] by the Court of Common Pleas of Northumberland County as

a result of appellant's entering guilty pleas to the following charges:  burglary[2]

at No. CP-49-CR-1161-2016 ("Docket No. 1161"); DUI-controlled substance

---

[1] Preliminarily, we note that appellant's notices of appeal purport to appeal from not only the April 15, 2019 judgments of sentence, but also from the trial court's order dated April 6, 2018 denying appellant's pretrial motion to dismiss and the trial court's order dated July 6, 2018, denying appellant's motion for reconsideration of appellant's pretrial motion to dismiss.  Because appellant's appeals properly lie from the April 15, 2019 judgments of sentence, we have corrected the captions accordingly.  ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa.Super. 2001) (***en banc***) (citation omitted), ***appeal denied***, 800 A.2d 932 (Pa. 2002).

[2] 18 Pa.C.S.A. § 3502(a)(2).

(first offense) and opening door unsafely[3] at No. CP-49-CR-1162-2016 ("Docket No. 1162"); criminal attempt (escape) and criminal mischief (tampering with property)[4] at No. CP-49-CR-1208-2016 ("Docket No. 1208"); and simple assault and recklessly endangering another person ("REAP")[5] at No. CP-49-CR-1219-2016 ("Docket No. 1219"). The trial court imposed an aggregate sentence of two to five years' imprisonment. After careful review, we affirm.[6]

The trial court set forth the following factual and procedural history:

> The facts are as summarized as follows as to [Docket No. 1161]:[Footnote 1]
>
>> [Footnote 1] [Appellant] is charged in four separate informations involving four separate incidents. On or around December 9, 2016, [the trial c]ourt and the attorneys attached to the case began to list [Docket Nos. 1161, 1162, 1208, and 1219] in the same caption. However, there is no record that a motion to consolidate was requested or imposed. Beginning in or around January 2017, only one submission was given to [the trial c]ourt for the four cases.
>
> On August 12, 2016, officers of the peace investigated a burglary that occurred at a residence in the City of Shamokin. The homeowner told the officers that while he was out of town, someone had broken into the

---

[3] 75 Pa.C.S.A. §§ 3802(d)(2) and 3705, respectively.

[4] 18 Pa C.S.A. §§ 901(a) and 3304(a)(2), respectively.

[5] 18 Pa.C.S.A. §§ 2701(a)(1) and 2705, respectively.

[6] The Commonwealth did not file a brief in this matter.

home, trashed the residence, cut the connection of the security cameras, and stole items, including a firearm. However, left behind was a hard drive connected to the video system that captured footage of the burglary. Upon watching the tape, an officer and the homeowner allegedly identified one of the suspects who entered the residence as [appellant].

A police criminal complaint was filed on August 12, 2016. On August 29, 2016, a preliminary hearing that was scheduled for August 23, 2016 was rescheduled for September 20, 2016. On September 20, 2016, [appellant] waived her right to counsel and her right to a preliminary hearing. A guilty plea conference was scheduled for November 7, 2016. On October 5, 2016, the [Commonwealth] filed an information that charged [appellant] with five counts. On December 9, 2016, [appellant's] bail was modified to $25,000 unsecured, and [appellant] was placed on the bail supervision program. On December 9, 2106, Michael O'Donnell[, Esq.,] was appointed to represent [appellant].

On January 13, 2017, the guilty plea that was scheduled for December 9, 2016 was continued to March 6, 2017. On February 10, 2017, Attorney O'Donnell filed a motion for leave to withdraw from representation, because he represented a co-defendant in one of [appellant's] criminal cases; on February 17, 2017, a hearing was scheduled for March 3, 2017 to review this matter. Attorney O'Donnell filed a motion to appoint counsel and for leave to withdraw from representation on March 3, 2017, which was granted on March 6, 2017. Also on March 6, 2017, Marc Lieberman[, Esq.,] was appointed to represent [appellant.]

The caption for the hearing on March 6, 2017 list[ed] only [Docket Nos. 1161 and 1162], and the Commonwealth called only for these two cases. However, Attorney Lieberman told [the trial c]ourt that he would be entering his appearance for [appellant] in all four cases. The [trial c]ourt allowed Attorney Lieberman to file a continuance to prepare

and review the matter "with time assessed against [appellant]."

On December 18, 2017, the Commonwealth's motion for status conference was granted, and the conference was scheduled for January 29, 2019. The order granting the conference was filed on December 19, 2016.

The facts are as summarized as follows as to [Docket No. 1162]:

On July 4, 2016, [appellant] had pulled her vehicle to the side of a road. As a car was passing by, [appellant] opened her door, which struck the passing car. An officer arrived on the scene and approached her vehicle, which was still running. [Appellant] exited the vehicle and the officer observed that she was swaying, slurring her speech, and had bloodshot eyes. A pedestrian, Jessica Day, tried to take [appellant's] purse from the car but the officer stopped Day. Upon searching the purse, officers found a marijuana cigarette and drug paraphernalia. After a field sobriety test, [appellant] was handcuffed and placed into the cruiser. She was taken to Shamokin Hospital, where she had a blood test done. Afterwards, [appellant] was transported home. A toxicology report came back on July 19, 2016, which showed controlled substances in [appellant's] blood.

A police criminal complaint was filed on July 19, 2016. On September 12, 2016, [the trial court] signed a commitment order against [appellant.] [The trial court] signed a recommitment order on September 20, 2016. On or around September 20, 2016, [appellant] signed a waiver of counsel form and a waiver of preliminary hearing. Also on September 20, a guilty plea conference was scheduled for November 7, 2016. The complaint was docketed on September 27, 2016. On October 5, 2016, the [Commonwealth] filed an information that charged [appellant] with four counts.

The facts are as summarized as follows as to [Docket No. 1208]:

[Appellant] had been imprisoned on August 12, 2016 and was incarcerated at Snyder County Prison. On August 14, 2016, [appellant] allegedly attempted suicide by using her own shoe straps. [Appellant] was escorted from the prison to Sunbury Community Hospital. At the hospital, [appellant] attempted to escape while wearing handcuffs and leg restraints; she was taken down by a correctional officer. [Appellant] was moved to a Northumberland County-owned transport vehicle outside the hospital's entrance. Once in the vehicle, she repeatedly kicked the right-rear passenger window, which caused it to break. Her actions prompted correctional officers to call for assistance from Sunbury Police. A Sunbury police officer noticed that [appellant] was holding shards of glass from the broken window and was attempting to cut herself. [Appellant] was removed from the transport vehicle and placed in the police cruiser. Once in the cruiser, [appellant] attempted to kick the divider, which prompted the Sunbury officer to fasten a hobble device around her leg shackles. [Appellant] said she wanted to make a phone call to check on the welfare of a relative, and that she would risk being shot. [Appellant] also told the officers that she was claustrophobic. When [appellant] was returned to Snyder County Prison, she refused to walk, and kicked and spat on two correctional officers. On August 15, 2016, [appellant] was transported to York County Prison. A written complaint was filed on August 24, 2016.

[Appellant's] bail was set at $100,000. She was committed for not being able to post bail. On September 20, 2016, [appellant] signed a waiver of counsel and a waiver of preliminary hearing. The [Commonwealth] filed an information on October 5, 2016. On November 4, 2016, a guilty plea conference that was scheduled for November 7 was continued to December 9, 2016 because the Sheriff would not transport [appellant] due to safety concerns. On December 9, 2016; bail was modified to $25,000 and

she was released on unsecured bail. On December 9, 2016, [appellant] signed a confession of judgment waiver. Also on that date, [Attorney] O'Donnell was appointed to represent [appellant.]

The facts are as summarized as follows as to [Docket No. 1219]:

On August 2, 2016, two law enforcement officers of the Shamokin Police Department were looking for an individual on whom [appellant] allegedly placed a [protection from abuse order]. The officers met with [appellant], who said the individual had thrown a rock at her vehicle. The officers told [appellant] not to search for the individual, and that they would look for him. The officers were unable to locate the individual at first, but they were dispatched to a Shamokin address because [appellant] had pepper-sprayed the individual, tried to stab a man and tried to gain entry to a home. When the officers confronted [appellant], they told her to drop the knife, which she did after some hesitation. [Appellant] was placed in police custody while police took control of the knife and interviewed the individual and the man. A police complaint was filed on August 2, 2016. A preliminary hearing was scheduled for August 9, 2016, but was continued for [appellant] to obtain legal representation. [Appellant's] bail was set at $15,000 and [appellant] was released on bond. On August 23, 2016, the [magisterial district judge] continued [appellant's] preliminary hearing for an unlisted reason. On September 20, 2016, [appellant] waived her right to counsel and her right to a preliminary hearing. [Appellant] was formally arraigned on October 3, 2016. On October 27, 2016, the [Commonwealth] filed an information on five counts. On December 9, 2016, bail was modified to $25,000 and she was released on unsecured bail. On December 9, 2016, [appellant] signed a confession of judgment waiver. Also on that date, [Attorney] O'Donnell was appointed to represent [appellant].

> On January 29, 2018, [appellant] filed a motion to dismiss under Pa.R.Crim.P. 600 as to all four cases. In this motion, [appellant] claims that the only period of time that has been assessed against [appellant] was between January 13, 2017 and March 6, 2017 for the different [docket] numbers. Aside from this period of time, more than 365 days had passed and [appellant] argues the Commonwealth failed to bring her to trial on time, thus violating her rights under the [C]onstitutions of Pennsylvania and the United States. The Commonwealth [did] not file[] a response to [appellant's] motion.

Trial court order denying appellant's Rule 600 motion, 4/6/18 at 2-6 (footnote 2 omitted).

The trial court held a hearing on appellant's Rule 600 motion on March 5, 2018. On April 6, 2018, the trial court entered an order denying appellant's Rule 600 motion. Appellant entered a guilty plea at all four docket numbers on April 15, 2019, wherein appellant reserved her right to bring an appeal addressing the trial court's denial of her Rule 600 motion. The trial court imposed sentence on April 15, 2019.

Appellant filed timely notices of appeal on May 15, 2019.[7] The trial court ordered appellant to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and appellant timely complied. In lieu of an opinion pursuant to Pa.R.A.P. 1925(a), the trial court filed a statement in

---

[7] The trial court entered its judgments of sentence in separate orders. Accordingly, **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and its progeny do not apply to the instant case.

which the trial court noted that its Rule 600 calculations were set forth in its April 6, 2018 order denying appellant's Rule 600 motion.

On August 13, 2019, this court, in a *per curiam* order, consolidated appellant's appeals *sua sponte*, pursuant to Pa.R.A.P. 513. On October 17, 2019, appellant filed with this court a petition to remand to the trial court for an "enlargement of the record to include local criminal practices and procedures for consideration of [] appellant's arguments to dismiss pursuant to [Pennsylvania Rule of Criminal Procedure] 600[,]" which this court granted in a *per curiam* order entered on October 18, 2019. The trial court held a hearing to supplement the record on October 31, 2019. Following the hearing, appellant filed an amended concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court subsequently filed a supplemental statement in lieu of an opinion pursuant to Pa.R.A.P. 1925(a), wherein it relies upon its previous Rule 600 calculations.

Appellant raises the following issues for our review:

> [I.] Whether the [trial] court erred in determing [sic] that a continuance that the [trial] court has granted may be of unlimited duration despite contrary local practices and procedures?
>
> [II.] Whether the [trial] court erred by not properly considering in this case, how the [trial] court's established local practices and procedures as to the duration of it's [sic] continuances, controls mechanical run time, pursuant to [Pa.]R.Crim.P. Rule 600?

Appellant's amended brief at 12 (full capitalization omitted).[8]

Preliminarily, we note the unusual procedural posture of this case. Generally, in cases where a defendant has entered a guilty plea, she waives her right to raise a direct appeal, except for appeals pertaining to jurisdiction, the legality of sentence, and the validity of the plea itself. *Commonwealth v. Lincoln*, 72 A.3d 606, 609 (Pa.Super. 2013), *appeal denied*, 87 A.3d 319 (Pa. 2014). As noted by previous panels of this court, because "our courts have not specifically addressed the validity of conditional plea agreements, our courts have proceeded to review the merits of issues specifically reserved in plea agreements." *Commonwealth v. Singleton*, 169 A.3d 79, 81-82 (Pa.Super. 2017), *appeal denied*, 181 A.3d 1080 (Pa. 2018), citing *Commonwealth v. Terreforte*, 587 A.2d 309 (Pa. 1991) (*per curiam* order) ("remanding for the Superior Court to review the appellant's Rule [600] claim

---

[8] We note that appellant failed to divide the argument section of her brief into as many parts as there are questions to be answered pursuant to Pa.R.A.P. 2119(a). We have the authority to dismiss appeals for failing to comply with the Pennsylvania Rules of Appellate Procedure and will do so in cases where such a failure hinders our ability to conduct meaningful appellate review. *In re R.D.*, 44 A.3d 657, 674 (Pa.Super. 2012), *appeal denied*, 56 A.3d 398 (Pa. 2012), citing *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa.Super. 2007), *appeal denied*, 940 A.2d 362 (Pa. 2008); *see also* Pa.R.A.P. 2101 (requiring that briefs conform with all material aspects of the relevant Rules of Appellate Procedure and granting appellate courts the power to quash or dismiss appeals in cases where defects in the brief are substantial). Here, because our ability to conduct meaningful appellate review has not been hindered, despite appellant's violation of Rule 2119(a), we will not dismiss her appeal.

after the appellant claimed that counsel was ineffective for informing him that he could reserve this issue for appeal in his plea agreement").

Here, the record reflects that appellant, when entering her guilty pleas, reserved her right to file an appeal pertaining to Rule 600 issues. (**See** written guilty plea addendum, 4/11/19 at unnumbered page 4.) Accordingly, we shall proceed to review appellant's issue on the merits.

> This Court reviews a ruling under Rule 600 pursuant to an abuse-of-discretion standard. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. Additionally, when considering a Rule 600 claim, this Court must view the record facts in the light most favorable to the winner of the Rule 600 motion. It is, of course, an appellant's burden to persuade us the trial court erred and relief is due.

> **Commonwealth v. Claffey**, 80 A.3d 780, 787 (Pa.Super. 2013) (citations omitted).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the

- 11 -

criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters . . . , courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Peterson*, 19 A.3d 1131, 1134-35 (Pa.Super. 2011), quoting *Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa.Super. 2007). Rule 600 provides, in relevant part, as follows:

**Rule 600.  Prompt Trial**

(A)   Commencement of Trial; Time for Trial

. . . [.]

    (2)  Trial shall commence within the following time periods.

        (a)  Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

. . . [.]

(C) Computation of Time

> (1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

. . . [.]

Pa.R.Crim.P. 600.

> Generally, Rule 600 requires that a defendant be brought to trial within 365 days of the filing of the criminal complaint. Pa.R.Crim.P. 600(A)(2)(a). However, a defendant is not automatically entitled to discharge under Rule 600 where trial starts more than 365 days after the filing of the complaint. ***Commonwealth v. Goldman***, 70 A.3d 874, 879 (Pa.Super. 2013). Rather, Rule 600 "provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time." ***Id.*** The adjusted run date is calculated by adding to the mechanical run date, i.e., the date 365 days from the complaint, both excludable time and excusable delay. ***Id.*** "Excludable time" is classified as periods of delay caused by the defendant. Pa.R.Crim.P. 600(C)(2). "Excusable

delay" occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. ***Commonwealth v. Roles***, 116 A.3d 122, 125 (Pa.Super. 2015). "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." ***Commonwealth v. Armstrong***, 74 A.3d 228, 236 (Pa.Super. 2013) (citation omitted). Due diligence includes, ***inter alia***, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. ***Commonwealth v. Ramos***, 936 A.2d 1097, 1102 (Pa.Super. 2007). Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence. Pa.R.Crim.P. 600(C)(1).

> ***Commonwealth v. Moore***, 214 A.3d 244, 248-49 (Pa.Super. 2019), ***appeal denied***, 224 A.3d 360 (Pa. 2020).

***Commonwealth v. Martz***, ___ A.3d. ___, 2020 WL 2029287 at *4-6 (Pa.Super. April 28, 2020).

As noted above, appellant bears the burden of proving that relief is due pursuant to Rule 600. ***See Claffey***, 80 A.3d at 787. On appeal, appellant presents the following argument:

> [Appellant] respectfully advocates that a specific period of time, a period of time which began with the commencement date of the next criminal term of

court of 2017, which followed the continuance granted on and dated March 16, 2017, and, that same period of time would then conclude on the date of the Status Conference held on December 19, 2017, should be assessed as time for purposes of Rule 600, **against** the Commonwealth as regards all of the four Informations filed by the Commonwealth against [a]ppellant.

Appellant's brief at 16 (emphasis in original). Specifically, the basis for appellant's appeal appears to be based in the local practice of Northumberland County, which appellant avers mandates that the Commonwealth is responsible for calling cases to trial. (*Id.* at 20.) Appellant further contends that the continuance granted by the trial court on March 16, 2017, with time applied to appellant, should have "logically ended pursuant to local practice on April 27, 201[7], with the date of commencement of the new Pre-Trial hearings or, arguably on April 10, 2017, with the next Criminal Jury Selection." (*Id.* at 22.)

The trial court, however, reached the following conclusion:

[Appellant] has already conceded that January 13, 2017 — March 6, 2017 shall be assessed against her. Of the utmost significance to the resolution of this issue, [the trial court] granted a continuance on behalf of [appellant] on March 6, 2017, "with time assessed against [appellant]." The declaration of the [trial] court governed the matter until further action was taken. As the [trial court] noted at the proceeding on March 6, 2017, this was for the purpose of allowing new counsel to prepare for future proceedings in the

matter, for [appellant's] benefit.[9]    Accordingly, [appellant's] Rule 600 motion is without merit.[Footnote 4] . . . .

> [Footnote 4] The Commonwealth had filed a motion for status conference on December 19, 2017, which was continued by [the trial court] by Order of January 29, 2018 in light of [appellant's] pending motions under Rule 600; this will be rescheduled and the "clock" now resumes against the Commonwealth from the date of this ruling.

Trial court order denying appellant's Rule 600 motion, 4/6/18 at 7.

The record supports the trial court's conclusion. Indeed, Northumberland County Deputy Court Administrator Amy Siko testified during direct examination by appellant's counsel as follows pertaining to the practice in Northumberland County:

> Q[:]  So in this matter, there was a period of time from March 2017 I believe, when a continuance was granted, until December of that year, when the matters--the four essential cases were scheduled for a status conference. So during that period of time, from March to December, whose responsibility would it have been to in effect schedule [appellant's] case for pre-trial conferences?
>
> A[:]  If it was scheduled in March and continued at [appellant's] request, it would have been [up to] her defense counsel to file a continuance to get to our office to have it rescheduled, which

---

9 Specifically, the record reflects that the trial court instructed appellant's counsel to file a continuance form and that the trial court would grant the continuance with time assessed against appellant. (Notes of testimony, 3/6/17 at 2.)

> typically is within 60 days, to have it put back on.
>
> Q[:]  Right.  And if--
>
> A[:]  And it was not put back on because we never got no paperwork [sic] to put it back on.
>
> . . . .
>
> THE COURT:  Well the transcript reflects [appellant's] request for a continuance, which I granted on the record, and indicated at that time that the time would be assessed against [appellant].  And what the Court Administrator is indicating is at that time, defense counsel at the end of the hearing typically hands up a written continuance form for the Judge to sign.  And that would be transmitted to the Court Administrator's Office, who would then complete the form by scheduling the next event in the case.
>
> So I think the lapse here occurred because, as [Ms. Siko] indicated, for whatever reason that continuance form was not handed up at the conclusion of the status conference in March.
>
> [Appellant's counsel]:  That may very well be, Your Honor.  It's too long ago for me to remember accurately what happened.  But I guess the point that I was making is that, without going into argument as far as Rule 600 and diligence, nothing occurred in the case from March of 2017 until there was a new order rescheduling it for a status conference some seven months later in December.  And my questions to the Deputy Court Administrator are to reflect that it would have been the responsibility of the [Commonwealth] to push the case along.  Apparently, Your Honor, again I am--
>
> THE COURT:  Hold on, let [Ms. Siko] answer the question.  Do you agree with that statement?
>
> [Ms. Siko]:  No, I do not.  If it was a status conference that was continued on the record, it would have been

the [defense a]ttorney's responsibility to get us a continuance to reschedule it as the time was against [appellant]. It's not the [Commonwealth's] job to list it for trial if it's not ready for trial.

Notes of testimony, 10/31/19 at 6-9.

In the instant case, the record reflects, and appellant concedes,[10] that appellant did not file a continuance with the Northumberland County Court Administrator after her case was continued at the record at appellant's counsel's request. Therefore, we find that the trial court's conclusions are based in the record and that the trial court did not misapply or override the law when reaching its conclusion. Accordingly, we find that the trial court did not abuse its discretion when it denied appellant's Rule 600 motion.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/08/2020

---

[10]     Apparently, no written continuance was filed nor was an Order of continuance ever issued. [Appellant's] counsel does not clearly remember what happened in this event from nearly three years ago. Perhaps [appellant's] counsel never filed a continuance form. Perhaps he did. Either is possible. [Appellant's] counsel cannot recall anything more.

Appellant's brief at 26.